ALLERION, INC., Plaintiff-Appellee, v. NUEVA ICACOS, S.A. de C.V., Defendant-Appellant.

First District (2nd Division)    No. 1—94—3746

Opinion filed June 4, 1996.—Rehearing denied September 5, 1996.—Modified opinion filed September 17, 1996.

Bullwinkel Partners, Ltd., of Chicago (John T. Allen and Harold J. Fassnacht, of counsel), for appellant.

Wilk & Waller, of Chicago (Adam J. Levitt, of counsel), for appellee.

Daniel E. Larkin, of Chicago, for *amicus curiae* Hyatt International Corp.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff, Allerion, Inc., is the successor company to Ultimate Computer Corporation, which entered into an "Agreement for Purchase of Equipment" (the contract) with defendant Nueva Icacos, S.A. de C.V. (Nueva),[1] on January 28, 1993. After Allerion, a New Jersey corporation licensed and authorized to do business in Illinois, filed a breach of contract action against it, Nueva filed a special appearance, objecting to the court's exercise of personal jurisdiction over it, and moved to quash service of summons.

In support of its objection, Nueva submitted the affidavit of its "General Administrative Manager," Juan M. Rodriguez, which: denied that any of its agents or representatives had ever entered Illinois for any purpose; claimed that neither party to the contract resided in Illinois; alleged that the contract did not require any performance in Illinois; stated that the contract called for the application of New Jersey law; and denied that it ever sought or obtained any benefits or protections of Illinois law or performed any acts which would subject it to the jurisdiction of the Illinois courts.

Allerion's response included the affidavits of Ed Jackowiak, Jerry Reyling, Jay Sturm, and Allan Taylor. Jackowiak was the sales executive based at Allerion's Illinois branch office who was "directly responsible for the oversight and management of the computer sale transaction" between Allerion and Nueva, "including system design, product costings, system consolidation and implementation, and customer questions."

The contract was signed on behalf of Allerion by Jackowiak, in Illinois, and by Nueva in Acapulco, "and both faxed to Ed Jackowiak at Plaintiff's Illinois office, and sent via overnight mail to the headquarters of Hyatt International, in Chicago, Illinois—and not sent to

---

[1]On June 21, 1996, Nueva filed a motion to require disclosure under section 2—1008 of the Code of Civil Procedure (735 ILCS 5/2—1008 (West 1994)), claiming that Allerion was not the real party in interest in this case due to pending bankruptcy proceedings. Nueva incorporates the allegations of that motion in its petition for rehearing. This argument had not been made to the trial court and had not been raised in the appellant's briefs or in oral argument before this court. Concomitantly with this opinion, we deny that motion and order that all further proceedings in this case be conducted in the trial court.

New Jersey." Jackowiak alleged that this evidenced "that Mr. Shakalo and Mr. Bos[2] were completely apprised of the fact that the transaction in question was based in the State of Illinois."

"[W]ith the exception of the physical signing of the contract in question, the performance of the contract was focused almost entirely in the State of Illinois," that is, "[Jackowiak] coordinated and oversaw the production, customization, and shipment schedule of all of the contracted-for computer equipment into Speed System International, Inc.'s Illinois-based warehouse, the consolidation of said equipment in the Illinois-based warehouse, and its ultimate shipment by Speed System International, Inc. from Illinois to the duty-free warehouse in Laredo Texas—where it remained until the breach in question occurred." Jackowiak also averred that "the parties to this transaction were aware of the fact that Allerion, Inc.'s Illinois-based international sales office would be performing the computer sale transaction that is the core of this matter."

Jackowiak also claimed to have "dealt extensively with both" Bos and Shakalo; to have "engaged in approximately twenty-five (25) telephone conversations and several items of written correspondence with Mr. Shakalo and Mr. Bos with regard to the contract in question"; and that "throughout his numerous dealings with Mr. Bos and Mr. Shakalo, they (Bos and Shakalo) knew to direct all correspondence regarding the computer sale contract to him (Ed Jackowiak) at Allerion, Inc.'s Illinois branch office." The affidavit incorporated a "facsimile transmission, dated February 15, 199[3], and sent to [Jackowiak] at Allerion, Inc.'s Illinois office by Michel Bos" which "clearly discusse[d] detailed elements of the contract."

The affidavits of Reyling, Sturm, and Taylor claimed that each of them "worked closely" on the contract with Nueva, and confirmed: "[t]hat a primary reason for locating the international accounts office of Plaintiff, Allerion, Inc., in Illinois [was] its proximity to the headquarters of Hyatt International, the franchisor and management company of the Acapulco-based hotel owned by Defendant [Nueva]"; that most of the performance of the contract was to be "undertaken, supervised, and overseen by the Illinois office of Plaintiff, Allerion, Inc."; "that significant and sustained telephonic and written communication has taken place between" Nueva and Allerion's Illinois office; that "performance of the contract was focused almost entirely in the State of Illinois"; that the signed contract, sent to Allerion, in Illinois, and to Hyatt International, in Illinois, evidenced Nueva's

---

[2]Shakalo was the former owner of Nueva and Bos the former general manager thereof.

owner's knowledge that the transaction in question was based in Illinois; and that the direction to commence production and custom assembly, the warehousing, and the consolidation of computer components were all performed in Illinois.

The attachments to Allerion's reply indicate that: the contract listed over 200 items of computer equipment, peripherals, and accessories, and the prices charged therefor, and bears the signature of the director of Nueva; the contract provided that the 30% downpayment would be made in U.S. dollars to Allerion, and the remaining payments would be "held with Mr. Stoga of Hyatt International, until such time [Allerion] meets the terms of the Agreement"; the contract's choice of law provision indicated that New Jersey law would govern; Hyatt International sent a letter to Joe Shakalo, in Mexico, indicating that a representative of Hyatt International went to Mexico to discuss the computer system, and that all the agreements were being sent to him in Mexico for his signature; and Michel Bos of Hyatt Acapulco sent a letter dated February 15, 1993, to Mr. Jackowiak which sought clarification of items contained on an invoice and referred to items "ordered according to contract 1-28-93."

Nueva's response to Allerion's reply contained another affidavit by Juan Rodriguez, in which he indicated that Nueva entered into a "Management Technical Assistance Agreement" with Hoteles Exelaris, the predecessor of Hyatt Mexico, but that it had never entered into any such agreement with Hyatt International Corporation, nor had it ever requested or authorized Hyatt International Corporation to deal on its behalf with Allerion "with respect to the development of the purported Agreement to purchase a Maxial computer system."

He further claimed that: "The records of Nueva Icacos and communications with Michel Bos, show that Nueva Icacos never understood that any part of the purported Agreement *** would, or would need to be, completed in Illinois. Nueva Icacos understood at all times relevant to the claims of Allerion, Inc., that virtually all hardware components to be supplied under the purported Agreement would be brought to Mexico from the United Kingdom. Nueva Icacos had no knowledge at any time before January 28, 1993, how [Allerion] would assemble and ship to Mexico the hardware components to be supplied under the purported Agreement, nor whether Illinois residents would be used for this purpose."

At the hearing on its objection, Nueva: denied that Hyatt International had acted as its agent; claimed that Allerion actively solicited the business of Hyatt International; and stated that only after Allerion and Hyatt negotiated for over a year was a proposal sent to Nueva in Mexico. Allerion focused on the precontractual negotia-

tions in the form of the telephone conversations and written correspondence alluded to above.

On July 5, 1994, the trial judge ruled that Allerion's affidavits were sufficient under Supreme Court Rule 191 (145 Ill. 2d R. 191), Nueva having made objection thereto, and denied Nueva's objection to the Illinois court's exercise of *in personam* jurisdiction over it. In making this ruling, he noted that Nueva executed a management technical assistance agreement with Hoteles Exelaris (currently Hyatt Mexico), in which Hoteles (Hyatt Mexico) was granted express authority to enter into contracts with third parties on Nueva's behalf. He further observed that Hoteles (Hyatt Mexico) was given "broad rights to operate the hotel including the delegation of those rights to others," expressly referring to Hyatt International. Based upon these provisions, the trial court made the factual finding that Hyatt International "was in fact the agent for [Nueva]."

The court noted that "the whole purpose behind this whole transaction is to get computers which are compatible between Hyatt Hotels so that bookings for rooms can be booked"; "the computer system in question here was Hyatt International's recommendation to all of its hotels to standardize its computer data bases; and that "[t]he maximal [*sic*] program recommended by Hyatt [was] discussed with defendant's management." He found that there were "numerous correspondence and transactions sent between *** the Hyatt International accounts office in Illinois and the defendant about the hotel system in question," and ruled that the computer transaction "create[d] jurisdiction in Illinois," as "there [were] sufficient contacts with the State of Illinois," and that the contacts between Nueva and Illinois were "not a random and or fortuitous act, it [was] the whole substance of the sale of the contract."

Nueva filed a motion for reconsideration, attaching the affidavit of Alexander J. Lee, the director of data processing of Hyatt International Corporation. Lee averred that: Hyatt International had no management services agreement or any contractual relationship with Nueva; Nueva never requested or authorized Hyatt International to deal with Allerion on its behalf; Hyatt International never acted as an agent on Nueva's behalf; and solicitations of computer hardware are made directly to hotel owners, not through Hyatt International.

He characterized his activities in connection with Nueva's computer purchase as "providing technical consultant support to Hyatt Mexico" and claimed that "Hyatt International played no role in the proposed sale." However, he also stated that "by and on behalf of Hyatt Mexico, [he] presented to Nueva Icacos a proposal for the adop-

tion of the Maxial computer system"; and that: "On behalf of relevant local national management companies, Hyatt International has in the past obtained from The Ultimate Corp. [currently Allerion] computer system quotes that are sent on to individual hotel owners. In these situations, the only role of Hyatt International was to insure that the proper configuration for the local hotel was provided and that the correct number of peripherals was specified. Any recommendations made with respect to the configuration were on behalf, and at the request of the local national management companies."

Nueva's motion to quash service was again denied on September 30, 1994. This appeal followed.

■ Nueva's objection to Allerion's affidavits is based on its assertion that they do not comply with Supreme Court Rule 191, which mandates that such affidavits:

> "shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 145 Ill. 2d R. 191.

■ Nueva complains that Allerion's affidavits were deficient because they failed to evidence the affiants' personal knowledge, citing *Canzoneri v. Village of Franklin Park*, 161 Ill. App. 3d 33, 37, 513 N.E.2d 1103 (1987) (affirming the trial court's order striking a counteraffidavit where the court had no information from which it could "make a reasonable inference that the affiant could competently testify to the contents of the affidavit at trial"). However, affidavits will not be stricken for technical deficiencies, for, where "it appears that an affidavit is based on the personal knowledge of the affiant and a reasonable inference is that the affiant could competently testify to the contents of the affidavit at trial, there is no requirement that the affiant specifically attest to these facts. [Citation.]" *Hoover v. Crippen*, 151 Ill. App. 3d 864, 868, 503 N.E.2d 848, 852 (1987), *appeal denied*, 119 Ill. 2d 557, 522 N.E.2d 1245 (1988).

In this case, Allerion's affidavits show that each of the four affiants was employed by Allerion and each claimed to have been closely involved in the Nueva contract; accordingly, the trial court could easily have inferred that the affiants possessed personal knowledge and could competently testify to the facts alleged in their affidavits as required by Supreme Court Rule 191.

■ Nueva also complains that the assertion that "significant and sustained telephonic and written communication ha[d] taken place" was completely devoid of any evidentiary foundation as to "date, time, place, participants, initiator and subject matter."

Although Jackowiak has failed to identify specific dates, details of each conversation and who had initiated each call, his assertion that he engaged in "25 telephone conversations and several items of written correspondence with Mr. Shakalo and Mr. Bos with regard to the contract in question" does indicate to whom he communicated, the extent of their contacts, and that the contract was the underlying subject matter on each occasion. We also note that, in response, Nueva has not denied either that the indicated number of conversations were had or that the contract was discussed on each occasion; nor has it denied having initiated any significant portion of the calls. Accordingly, we affirm the trial judge's ruling that these statements are sufficient for the purposes of Rule 191. See *Hoover v. Crippen*, 151 Ill. App. 3d 864, 868, 503 N.E.2d 848, 852 (1987) (wherein the court held that an affiant's failure to aver that the contents of his affidavit were based upon personal knowledge did not render the affidavit improper), *appeal denied*, 119 Ill. 2d 557, 522 N.E.2d 1245 (1988).

Nueva's remaining contention on appeal is that our courts cannot exercise *in personam* jurisdiction over it under either the United States Constitution or under Illinois law. The Illinois long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209(c) (West 1994).

■ In order to exercise *in personam* jurisdiction over a defendant, the due process clause of the fourteenth amendment requires that the defendant have "minimum contacts" with the forum State to the extent that maintenance of the suit there does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945).

In analyzing the contacts between a defendant and the forum state, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. [Citation.]" *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1239-40 (1958), *reh'g denied*, 358 U.S. 858, 3 L. Ed. 2d 92, 79 S. Ct. 10 (1958). "The 'substantial connection' [citations] between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*. [Citation.]" (Emphasis in original.) *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 112, 94 L. Ed. 2d 92, 104, 107 S. Ct. 1026, 1032 (1987).

"In the area of contract law, Illinois courts have found that a single business transaction can be sufficient to constitute the 'minimum contacts' necessary to give a court *in personam* jurisdiction over a nonresident defendant. [Citations.]" *Capital Associates Development Corp. v. James E. Roberts-Ohbayashi Corp.*, 138 Ill. App. 3d 1031, 1037, 487 N.E.2d 7, 11 (1985) (indicating that "key factors include: who initiated the transaction, where the contract was formed, and where performance, or a major part thereof, was to be made"). In *Burger King Corp. v. Rudzewicz*, the United States Supreme Court held:

> "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. \*\*\* Instead, we have emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [Citation.] It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79, 85 L. Ed. 2d 528, 544-45, 105 S. Ct. 2174, 2185 (1985).

The due process clause permits personal jurisdiction to be exercised over a defendant based upon acts of its agent. *Damian Services Corp. v. PLC Services, Inc.*, 763 F. Supp. 369, 372 (N.D. Ill. 1991). Nueva maintains that Allerion has not furnished sufficient facts to support the trial court's conclusion that Hyatt International was acting as its agent in negotiating the contract (citing *Kutner v. De Massa*, 96 Ill. App. 3d 243, 421 N.E.2d 231 (1981) (where this court held that plaintiff had failed to make a *prima facie* showing that personal jurisdiction existed because he failed to set forth any facts supporting his conclusion that an agency relationship existed in response to the defendant's express denial)). We disagree.

■ The record is clear that Hyatt International actively negotiated with Allerion to provide Nueva with over 200 individually named and priced items of computer equipment, accessories and peripherals which constituted the custom computer system configuration required by Hyatt Mexico. Nueva's execution of this detailed contract as negotiated by Hyatt International leads irresistibly to the conclusion that Hyatt International was negotiating on behalf of Nueva. We further note that the contract provided that after Nueva

made the initial downpayment, the remaining contract payments were to be held by Hyatt International until they were to be released to Allerion.

The trial court's finding was further supported by Hyatt International's own affidavit wherein, as previously noted, Lee stated that *"by and on behalf of Hyatt Mexico,* [he] presented to Nueva Icacos a proposal for the adoption of the Maxial computer system"; and that: *"On behalf of relevant local national management companies,* Hyatt International has in the past obtained from The Ultimate Corp. [currently Allerion] computer system quotes that are sent on to individual hotel owners. In these situations, the only role of Hyatt International was to insure that the proper configuration for the local hotel was provided and that the correct number of peripherals was specified. Any recommendations made with respect to the configuration were *on behalf, and at the request of the local national management companies."* (Emphasis added.)

Although Hyatt International denies that it had acted as Hyatt Mexico's agent, and characterizes its dealings with Allerion as "providing technical consultant support to Hyatt Mexico," we are not persuaded that the trial judge's finding that Hyatt International acted as Hyatt Mexico's agent in negotiating the contract was against the manifest weight of the evidence. *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 25, 562 N.E.2d 989 (1990).

In assessing the impact of the significant and ongoing communications in which Nueva had engaged regarding the contract, we note that in addition to the contract negotiations and telephone communications, Allerion executed the contract in Illinois, and that after Nueva signed the contract, it faxed one copy to Allerion's Illinois office and sent another copy to Hyatt International in Illinois. In addition, a February 1993 communication referring to the contract was sent to Allerion in Illinois, the initial downpayment for the purchase of the equipment was to be made to Allerion in Illinois, and the remaining contract payments were to be held by Hyatt International in Illinois, and eventually released to Allerion's Illinois office.

Moreover, the following elements of performance occurred in Illinois: "[Jackowiak] coordinated and oversaw the production, customization, and shipment schedule of all of the contracted-for computer equipment into Speed System International, Inc.'s Illinois-based warehouse, the consolidation of said equipment in the Illinois-based warehouse, and its ultimate shipment by Speed System International, Inc. from Illinois to the duty-free warehouse in Laredo Texas." The affidavits of Reyling, Sturm and Taylor indicate that at least these three other Illinois-based Allerion employees also worked in connection with the contract.

Accordingly, we agree with the trial judge's conclusion that Nueva has had the requisite "minimum contacts" with the State of Illinois. See *G.M. Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 344, 596 N.E.2d 212 (1992) (wherein "the affidavits and pleadings establish[ed] that defendant actively initiated and negotiated an ongoing commercial relationship with plaintiff, an Illinois seller"); *Capital Associates Development Corp. v. James E. Roberts-Ohbayashi Corp.*, 138 Ill. App. 3d 1031, 1037, 487 N.E.2d 7 (1985) (finding defendant had minimum contacts with Illinois where payment under the contract took place from an office located in Illinois, numerous letters were sent to plaintiff's Illinois office, defendant "initiated negotiations with an entity it knew to be an Illinois resident," that it voluntarily entered into a contract with an Illinois resident, and it was aware that performance would flow from Illinois); *Empress International, Ltd. v. Riverside Seafoods, Inc.*, 112 Ill. App. 3d 149, 154, 445 N.E.2d 371, 374 (1983) (finding that defendant had minimum contacts with Illinois where it "voluntarily entered into a business transaction with an entity he knew, or should have known, was an Illinois resident," the contract was formed in Illinois, the order for goods was received in Illinois and shipped from Illinois, the goods were stored in Illinois prior to shipment, and "at least some paperwork was completed" in Illinois).

"Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476, 85 L. Ed. 2d at 543, 105 S. Ct. at 2184, quoting *International Shoe*, 326 U.S. at 320, 90 L. Ed. at 104, 66 S. Ct. at 160. In cases involving an alien defendant, the relevant factors include: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief," and "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." (Emphasis omitted.) *Asahi*, 480 U.S. at 113, 115, 94 L. Ed. 2d at 105, 106, 107 S. Ct. at 1033, 1034.

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114, 94 L. Ed. 2d at 105, 107 S. Ct. at 1033. "In every case, [the interests of other nations], as well as the federal interest in foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the

serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. 'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' " *Asahi*, 480 U.S. at 115, 94 L. Ed. 2d at 106, 107 S. Ct. at 1034, quoting *United States v. First National City Bank*, 379 U.S. 378, 404, 13 L. Ed. 2d 365, 381, 85 S. Ct. 528, 542 (1965) (Harlan, J., dissenting).

Nueva has reached into the State of Illinois, negotiated through its agent, and entered into a detailed contract with a company doing business in Illinois. It engaged in ongoing communications with the Illinois-based seller, and the contract required partial performance within the State of Illinois.

We believe that to deny companies doing business in Illinois the use of Illinois courts to pursue their rights under contracts entered into under the circumstances present in this case would negatively impact Illinois commerce. *Autotech Controls Corp. v. K.J. Electric Corp.*, 256 Ill. App. 3d 721, 728, 628 N.E.2d 990, 996 (1993) (stating "to bar Illinois companies who have contracted with nonresident corporations to sell goods manufactured in Illinois, from vindicating their rights by suing such corporations in Illinois courts *** would have catastrophic implications for Illinois commerce"). Accordingly, for all the foregoing reasons, we agree with the trial judge's conclusion that Nueva should be required to defend this breach of contract action in Illinois.

We hold that exercising *in personam* jurisdiction over Nueva is also permissible under the Illinois Constitution, the due process guarantee of which requires that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois. [Citation.]" *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990).

Nueva relies on *Chalek v. Klein*, where the court made a distinction between active and passive purchasers, and claims that it cannot be subjected to Illinois jurisdiction "merely because they have entered into a contract with an Illinois resident." See *Chalek v. Klein*, 193 Ill. App. 3d 767, 773, 550 N.E.2d 645 (1990). *Chalek* explains that "[d]istinguishing between active and passive purchasers therefore protects the ordinary mail order consumer who merely orders an item of merchandise from a company in a distant State from having to submit to the jurisdiction of the courts of that State while at the same time it protects sellers who manufacture custom-built products according to a nonresident buyer's specifications. [Citation.]" *Chalek v. Klein*, 193 Ill. App. 3d 767, 773, 550 N.E.2d 645 (1990).

52

Here, Nueva negotiated the computer purchase contract through its Illinois-based agent for equipment which meets the specific compatibility needs of Hyatt hotels. Additionally, Allerion has alleged that Nueva itself engaged in substantial communications with it in connection with the contract. Nueva's involvement in this transaction is far from that of a "mail order consumer." Accordingly, we conclude that it is not unfair to bring Nueva "into an Illinois court to enforce the obligations [it] knowingly undertook." See *G.M Signs, Inc. v. Kirn Signs, Inc.*, 231 Ill. App. 3d 339, 342, 596 N.E.2d 212, 214 (1992).

Therefore, for all of the foregoing reasons, the judgment of the circuit court is affirmed.[3]

Affirmed.

DiVITO and BURKE, JJ., concur.

---

[3]This court also rules as follows on the motions that were taken with this case: Nueva Icacos's motion filed October 13, 1995, for leave to identify alleged facts not supported by the record on appeal is denied as moot; and its motion filed February 23, 1996, requesting that material from appellee Allerion's brief be stricken and that sanctions be imposed is denied.