2018 IL App (1st) 170862

FIRST DIVISION
September 10, 2018

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-17-0862

| | | |
|---|---|---|
| SAFEWAY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2013 CH 12097 |
| | ) | |
| BEATRICE EBIJIMI and DADA EBIJIMI, | ) | Honorable |
| | ) | Anna Demacopolous, |
| Defendants, Counterplaintiffs, and Third-Party | ) | Judge Presiding. |
| Plaintiffs-Appellants | ) | |
| | ) | |
| (Parillo, Weiss & O'Halloran, Third-Party Defendant- | ) | |
| Appellee). | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Harris and Pierce concurred in the judgment.

**OPINION**

¶ 1    Beatrice Ebijimi demanded arbitration under her mother Dada Ebijimi's policy with Safeway Insurance Company (Safeway) after Beatrice was injured by an uninsured motorist. Safeway sued Beatrice and Dada (the Ebijimis), seeking a stay of arbitration and a declaration that it had no obligation to settle or arbitrate the Ebijimis' uninsured motorist claim. The trial court denied the Ebijimis' motion for substitution of judge, struck the affidavit of the Ebijimis' attorney attached to their opposition to summary judgment, and granted summary judgment to Safeway, finding that the Ebijimis failed to satisfy several conditions of the policy.

¶ 2    We find no error in the trial court's denial of the motion for substitution of judge. But we find that the trial court erred in striking all of defense attorney's affidavit filed in support of the Ebijimis' response to Safeway's motion for summary judgment. When we consider those portions of the affidavit that should not have been struck, we do not agree that Safeway was entitled to summary judgment. We also find the trial court should not have dismissed the Ebijimis' counterclaim or third-party complaint. We affirm in part, reverse in part, and remand for further proceedings.

¶ 3                              I. BACKGROUND

¶ 4    The Ebijimis allege that, on January 20, 2006, Beatrice was hit by Patricia Tyson's car, and that Ms. Tyson was not insured. Beatrice submitted a claim to Safeway on March 13, 2006, for uninsured motorist coverage through her mother, Dada Ebijimi, who was the named insured on the Safeway policy. The record is unclear as to whether Beatrice was hit as a pedestrian or she was driving a car, but counsel for the Ebijimis advised us at argument that she was a pedestrian.

¶ 5                              A. The Policy

¶ 6    Part II of the policy defines "uninsured motor vehicle" as "a motor vehicle or trailer [for which] there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile." Part II also provides for arbitration of uninsured motorist claims. Safeway denied coverage on the basis of the following provisions:

> "[Condition] 3. Notice. In the event of an accident, occurrence or loss, written
>
> notice containing particulars sufficient to identi[fy] the insured and also reasonably
>
> obtainable information with respect to the time, place and circumstances thereof, and the
>
> names and address of the injured and of available witnesses, shall be given by or for the

insured to the Company as soon as practicable.

* * *

[Condition] 10. Proof of Claim; Medical Report—Part II, III and IV. As soon as practicable, the insured or other person making claim shall give to the Company written proof, under oath, if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable. The insured and every other person making claim shall submit to examinations under oath by any person named by the Company and subscribe the same, as often as may reasonably be required. Proof of claim shall be made upon forms furnished by the Company unless the Company shall have failed to furnish such forms within 15 days after receiving notice of claim.

The injured person shall submit to physical examinations by physicians selected by the Company when and as often as the Company may reasonably require ***."

¶ 7     The policy also provides: "No action shall lie against the company unless, as a condition precedent thereof, there shall have been full compliance with the terms of this policy ***."

¶ 8                    B. The Arbitration Demands and the Parties' Correspondence

¶ 9     In a March 13, 2006, letter, the Ebijimis advised Safeway of the accident, told Safeway that the office of Robert A. Langendorf & Associates represented them, and demanded arbitration of their uninsured motorist claim. On March 16, 2006, Safeway sent an accident report form to the Ebijimis to complete and return. On March 17, 2006, Safeway sent uninsured motorist forms to the Ebijimis and requested that the Ebijimis comply with the policy by (1) completing and returning the uninsured motorist claim forms, (2) presenting Beatrice for an independent medical exam (IME), and (3) giving statements under oath. On March 31, 2006,

Safeway requested proof from the Ebijimis that the "alleged tortfeasor," Patricia Tyson, "was in fact uninsured at the time of the occurrence."

¶ 10    At some point in 2006 or 2007, counsel for the Ebijimis, Robert Langendorf, forwarded a letter to Safeway issued by the Illinois Department of Transportation (IDOT), dated August 24, 2006, stating that Ms. Tyson was insured by Affirmative Insurance Company (Affirmative Insurance) at the time of the accident. On December 18, 2007, Mr. Langendorf forwarded a letter addressed to Safeway, issued by Affirmative Insurance on November 9, 2006, which stated that Ms. Tyson's Affirmative Insurance policy had been cancelled before the accident due to nonpayment of premiums and had not been reinstated.

¶ 11    Safeway's attorneys responded with three letters—dated January 31, 2008, June 17, 2008, and July 18, 2008—requesting that the Ebijimis supply proof that Ms. Tyson was uninsured at the time of the accident, complete the accident forms that Safeway sent them, and schedule and submit to statements under oath and an IME. In the June 17, 2008, letter, counsel for Safeway specifically renewed the demand for IDOT certification of Ms. Tyson's uninsured status, saying that "[t]he fact that Ms. Tyson may or may not have been insured through [Affirmative Insurance] does not preclude the fact that insurance may have been purchased elsewhere."

¶ 12    According to the affidavit of Mr. Langendorf submitted by the Ebijimis in response to Safeway's motion for summary judgment, the Ebijimis filed a demand for arbitration with the American Arbitration Association (AAA) on February 14, 2008, and sent the demand to Safeway. Mr. Langendorf states that Safeway "refused and would not pay its share of the AAA administration fee despite numerous requests" and that AAA ultimately closed its file on June 27, 2008, as a result of this lack of payment.

4

¶ 13    For nearly five years, the record reveals no action by either party regarding the Ebijimis' claim. According to Mr. Langendorf's affidavit, on February 7, 2013, he "reopened the claim with AAA and again demanded arbitration," but "Safeway did not respond to the demand for arbitration or pay its share of the AAA administration fee (which [he] eventually paid)."

¶ 14                                C. Procedural History

¶ 15    On May 7, 2013, Safeway filed this lawsuit seeking an order staying arbitration and declarations that no coverage existed under the policy for the January 20, 2006, accident and that, due to her failure to comply with the policy terms, Safeway was "not obligated to settle or arbitrate the uninsured motorist claim of Beatrice Ebijimi." The trial court stayed the arbitration of the Ebijimis' claim on July 8, 2014, pending the outcome of this declaratory judgment action.

¶ 16    On August 5, 2014, the Ebijimis answered the complaint and filed a counterclaim against Safeway, asking the trial court to find that (1) Safeway was not entitled to a stay of arbitration and was instead compelled to participate in that proceeding and reimburse the Ebijimis for its share of the AAA administration fee, (2) Safeway acted in "bad faith" under section 155 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/155 (West 2006)), (3) Safeway breached the terms of the policy, (4) Safeway violated the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2006)), (5) Safeway was estopped from disputing or denying coverage, and (6) a class ought to be certified for those injured by Safeway's bad faith. On that date, the Ebijimis also moved for class certification and filed affirmative defenses to Safeway's complaint, including that Safeway was estopped from raising policy defenses because of its conduct and that it was similarly barred from denying coverage under the doctrine of *laches*. Safeway never responded to the affirmative defenses.

¶ 17    On September 17, 2014, the Ebijimis were granted leave to withdraw their counterclaim

and file an amended counterclaim by October 14, 2014. They did not file an amended counterclaim, but instead filed a third-party complaint against the law firm Parillo, Weiss & O'Halloran (PWO), which represented Safeway in the declaratory judgment suit. In their third-party complaint, the Ebijimis made class action allegations against PWO and sought to recover against the firm under section 155 of the Insurance Code (215 ILCS 5/155 (West 2006)) for PWO's "aiding and abetting" of Safeway's allegedly vexatious conduct.

¶ 18    On November 12, 2014, Safeway moved for summary judgment, arguing that the Ebijimis did not satisfy the conditions of the policy and Safeway was therefore not required to arbitrate. The Ebijimis moved to disqualify PWO as Safeway's attorneys, but the trial court denied that motion.

¶ 19    On March 12, 2015, the Ebijimis filed a motion for discovery and, shortly thereafter, were granted leave to issue written discovery as to the issues raised in Safway's motion for summary judgment. Also on March 12, the Ebijimis filed a "motion to clarify and/or supplement court order and amend title third party complaint," seeking an order clarifying that their original counterclaim was still pending because they never filed an amended version, having instead decided to bring PWO into the case through a third-party complaint. According to our review of the record, that motion was never ruled on.

¶ 20    From May 2015 to April 2016, the Ebijimis filed various motions related to discovery, and the trial court entered and continued Safeway's motion for summary judgment. Judge Anna Demacopoulos began presiding over this case in late 2015. On April 21, 2016, she entered an order ruling on certain discovery matters and setting a briefing schedule for summary judgment. On April 28, 2016, the Ebijimis filed a one-paragraph motion for substitution of judge as of right, which was denied on May 10, 2016. The trial court denied substitution "based on the

substantive ruling of April 21st and [the] testing of waters during [the] hour long hearing."

¶ 21    On May 23, 2016, the Ebijimis filed a response to Safeway's motion for summary judgment, with Mr. Langendorf's affidavit attached. On June 6, 2016, Safeway filed a motion to strike Mr. Langendorf's affidavit as violating Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). The content of that affidavit is discussed in some detail in our analysis below.

¶ 22          D. The Trial Court's Rulings on the Affidavit and Summary Judgment

¶ 23    The trial court heard argument on both Safeway's motion for summary judgment and its motion to strike Mr. Langendorf's affidavit on August 22, 2016. On that date, the trial court struck the affidavit in its entirety, finding that it consisted of "[u]nsupported and self-serving and conclus[ory] statements" regarding Mr. Langendorf's beliefs and experience, such that he would not "subsequently be able to testify to" its contents and have "that testimony be competent and admissible evidence." The trial court also granted summary judgment for Safeway, finding that "[n]o genuine issue of material fact exist[ed] on whether or not the [Ebijimis] complied with" the conditions of the policy. Specifically, it found that the Ebijimis' letter notifying Safeway of the accident and their uninsured motorist claim under the policy did not satisfy the notice provision in Condition 3 of the policy and that the Ebijimis failed to comply with Condition 10 because they "never set up an [IME], nor did they send the information asked of them in 2006 and in 2008, the IDOT certification and completed accident report forms."

¶ 24    The court determined that Safeway was "entitled to judgment as a matter of law," rejecting the claims of estoppel and waiver raised in the Ebijimis' counterclaim and affirmative defenses. It found "conclusory" the argument that Safeway "lulled or induced Attorney Langendorf and defendants to take no action on their claim as to Condition 10," and determined that the doctrine of *laches* was inapplicable, in that "neither party here is innocent" because of

7

the delay, and the Ebijimis "cannot place their entire blame or blame ignorance on the plaintiff for [their] own inaction over the years." According to the trial court, because "there were no factual allegations that would make the [Ebijimis] successful on their affirmative defenses" of estoppel, waiver, and *laches*, the Ebijimis had no excuse for failing to satisfy the policy conditions and Safeway was entitled to summary judgment.

¶ 25    Safeway then moved to dismiss the Ebijimis' third-party complaint against PWO and the Ebjimis' counterclaim, and the Ebijimis moved to reconsider the trial court's order of August 22, 2016. On December 12, 2016, the trial court denied the Ebijimis' motion to reconsider and denied them leave to file an amended counterclaim. On February 28, 2017, it dismissed their third-party complaint against PWO and found that this was "a final order disposing of all claims in this case."

¶ 26                                    II. JURISDICTION

¶ 27    The Ebijimis timely filed their notice of appeal on March 28, 2017. We have jurisdiction under Illinois Supreme Court Rules 301 and 303, governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 28                                    III. ANALYSIS

¶ 29    Before addressing the issues raised in the briefs, we address a motion filed by Safeway to strike those portions of the Ebijimis' briefs that were not supported by the record. We took that motion with the case. We agree that certain portions of the brief did not have sufficient support in the record and those have been disregarded. Other portions of the brief are supported by Mr. Langendorf's affidavit, which is in the record and which we find the trial court improperly struck in part. Therefore, we have relied on that affidavit where appropriate. We now address the issues

raised by the parties.

¶ 30                                    A. Substitution of Judge

¶ 31    The Ebijimis challenge the trial court's May 10, 2016, denial of substitution of judge as of right. We deal with this issue first because, if it were a proper basis for reversal, it would moot all other issues. See *In re Marriage of Crecos*, 2015 IL App (1st) 132756, ¶ 28. We find no error in the denial of this motion.

¶ 32    Section 2-1001 of the Code of Civil Procedure (Code) provides that, "[e]ach party shall be entitled to one substitution of judge without cause as a matter of right." 735 ILCS 5/2-1001(a)(2)(i) (West 2006). A motion for substitution of judge as of right must be filed before the trial judge considering the motion rules upon any "substantial issue." *Petalino v. Williams*, 2016 IL App (1st) 151861, ¶ 18. We review the denial of such a motion *de novo*. *In re Estate of Gay*, 353 Ill. App. 3d 341, 343 (2004). The trial court in this case denied substitution "based on the substantive ruling of April 21st and [the] testing of waters during [the] hour long hearing."

¶ 33    A substantive ruling is one that directly relates to the merits of the case. *Id.* "[A] trial court's ruling on a discovery motion is a ruling on a substantial issue when it pertains to evidentiary trial matters." *City of Granite City v. House of Prayers, Inc.*, 333 Ill. App. 3d 452, 461 (2002); see also *Nasrallah v. Davilla*, 326 Ill. App. 3d 1036, 1040 (2001) (finding that rulings are substantial when "any question of evidence to be admitted" is considered). Even if a court has not made a substantive ruling, it may deny substitution "if the movant had an opportunity to 'test the waters' and form an opinion as to the judge's reaction to her claim." *Gay*, 353 Ill. App. 3d at 343.

¶ 34    The trial judge's order in this case says there was "testing of waters during [the] hour-long hearing on April 21, 2016." The Ebijimis have provided no hearing transcript or bystander's

report that would allow us to question that conclusion. The burden is on them as appellants to provide a complete record and their failure to do so will be construed against them. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). We affirm the ruling of the trial court on this basis.

¶ 35    We also affirm on the basis that the trial judge made a substantive ruling. We can see from the common law record that at the April 21, 2016, hearing, the trial court granted the Ebijimis leave to depose a former employee of Safeway, denied their motion to compel written discovery and for broader depositions, and ordered them to come forward with evidence that Safeway disputed or denied coverage. These kinds of discovery rulings are substantive because they decide what is relevant to the case. *In re Marriage of Petersen*, 319 Ill. App. 3d 325, 338-39 (2001).

¶ 36                                  B. The Stricken Affidavit of Robert Langendorf

¶ 37    Before granting summary judgment for Safeway, the trial court struck Mr. Langendorf's affidavit in its entirety. If we find that striking the affidavit was improper, we must review the trial court's summary judgment ruling in light of the additional contribution, if any, made by the affidavit. See *Smith v. United Farm Mutual Reinsurance*, 249 Ill. App. 3d 686, 690 (1993). We review *de novo* the trial court's ruling striking the affidavit. *Madden v. Paschen*, 395 Ill. App. 3d 362, 386 (2009).

¶ 38    Under Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), affidavits in support of or opposition to summary judgment:

"shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show

10

that the affiant, if sworn as a witness, can testify competently thereto."

¶ 39 An affidavit satisfies the requirements of Rule 191(a) "if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents." (Internal quotation marks omitted.) *Madden*, 395 Ill. App. 3d at 386. When a court rules on a motion to strike, "only the tainted portions" of the affidavit should be stricken and any remaining portions that satisfy Rule 191(a) should be saved. *Murphy v. Urso*, 88 Ill. 2d 444, 462-63 (1981).

¶ 40 After stating that he was a licensed attorney in Illinois with a history of practicing insurance law, that he represented the Ebijimis in this matter, and that he made an uninsured motorist claim and demand for arbitration on their behalf, Mr. Langendorf attested as follows:

"4. After the uninsured motorist claim was made Safeway and its attorneys requested through correspondence and communications that I provide them with a certified letter from I-DOT stating that the driver at fault in the accident (Patricia Tyson) was not insured at the time of the accident. ***

5. Due to the fact Ms. Tyson reported to the Illinois Department of Transportation *** that she had insurance with Affirmative [Insurance], I-DOT could not send a letter certifying Ms. Tyson was uninsured on the date of the accident. ***

6. My office communicated with Affirmative Insurance and obtained a letter from Affirmative Insurance stating Ms. Tyson was not insured at the time of the accident due to non-payment of premium ***.

7. I sent the letter from Affirmative Insurance to Safeway's attorneys at [PWO] who advised me they were handling the claim for Safeway. ***

8. On January 31, 2008 I received a letter from Cheryl Fleming, the PWO

11

attorney handling the claim, stating it was the second notice and requesting proof the alleged tortfeasor was in fact uninsured at the time of the occurrence within 14 days. ***"

¶ 41   In his affidavit, Mr. Langendorf also reviewed the correspondence through 2008, including a letter he sent on June 5, 2008, that included the police report with information on the accident, witnesses, and Beatrice's initial medical treatment. He then stated the following regarding his conversations with representatives of Safeway:

"16. Over the course of a few years, prior to and after the AAA demand, I had various conversations with attorneys from PWO and specifically Cheryl Fleming wherein I was told nothing would be done on the Ebijimi[s'] claim by Safeway because they did not have a certified letter from IDOT stating Ms. Tyson was uninsured.

***

18. *** I recall telephone conversations with attorney Cheryl Fleming sometime after we provided them with the letter from Affirmative Insurance stating this was not an uninsured motorist case. During the conversations Cheryl Fleming told me Safeway was not accepting coverage. I asked what they wanted us to do (the Ebijimis) and she told me not to bother doing anything, no proof of claim, sworn statement or IME and she suggested I file a declaratory action. I said no and I would proceed with AAA and they could file a declaratory action.

19. The telephone conversations with Ms. Fleming, and my past experience with Safeway and PWO, was a clear indication to me the claim was disputed based upon Safeway's dissatisfaction with the proof of no insurance provided and that any actions taken on the part of the Ebijimis would be futile.

* * *

12

23. No further actions were taken on the claim on behalf of the Ebijimis at that time because my communications with PWO made it clear and Safeway specifically [led] me to believe the threshold showing of uninsured motorist status of the driver was not accepted. Therefore, any actions including completing any forms, and IME and sworn statement would be futile because Safeway was not accepting the proof of no insurance provided. I believed no actions were necessary until Safeway accepted the proof the driver was uninsured. Based upon Safeway's statements and refusal to pay AAA [I] believed they would be filing a timely declaratory action to dispute the proof of insurance (which they did not).

\* \* \*

26. The last communication Safeway had with me (until the AAA demand claim was reopened) was July of 2008.

\* \* \*

29. After it became apparent to me Safeway was not going to file a declaratory action because it had not taken any action for years, on February 7, 2013 I reopened the claim with AAA and again demanded arbitration. Again Safeway did not respond to the demand for arbitration or pay its share of the AAA administration fee (which I eventually paid).

30. On May 7, 2013 Safeway filed its complaint for Declaratory Judgment and to Stay Arbitration.

31. At no time did Safeway or PWO, prior to filing the declaratory action, state to me I was violating the policy or say the claim would be denied if the Ebijimis did not fill out the forms or do an IME or statement and based upon my experience and

13

conversations with Cheryl Fleming that they would be a waste of time because they were not accepting coverage. ***"

¶ 42 Several of the remaining paragraphs in Mr. Langendorf's affidavit generally comment on business practices of Safeway and PWO or restate Mr. Langendorf's perceptions of Safeway's conduct as it related to the Ebijimis' claim.

¶ 43 The Ebijimis argue on appeal that it was "improper for the court to strike Mr. Langendorf's affidavit," because the "facts contained in the affidavit are admissible and crucial" to their defense. In particular, they emphasize the portions of the affidavit containing "details regarding communications between Mr. Langendorf and Safeway's attorney, Cheryl Fleming," in which Mr. Langendorf was told "nothing would be done on the Ebijimi[s'] claim by Safeway because they did not have a certified letter from IDOT stating Ms. Tyson was uninsured." Paragraph Nos. 16, 18, 19, 23, 26, 29, 30, and 31 all contain sworn statements about the conversations between Mr. Langendorf and counsel for Safeway regarding the quality of the proof that Ms. Tyson was uninsured, whether it was futile for the Ebijimis to attempt to comply with the conditions of the policy absent IDOT certification that Ms. Tyson was uninsured, and the manner in which the Ebijimis—through Mr. Langendorf—were induced to rely on Safeway's remarks regarding the IDOT certification, the uninsured form, the IME, and the sworn statements. Construed liberally, these portions of the affidavit satisfied Rule 191(a) and should not have been stricken. See *Mitchell v. Simms*, 79 Ill. App. 3d 215, 220 (1979).

¶ 44 In addition, in paragraph Nos. 1 through 9 and 13 through 16 of the affidavit, Mr. Langendorf attests to facts within his knowledge, references attachments included in the Ebijimis' response to summary judgment, and generally lays a foundation for the remainder of the affidavit. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 45    To be sure, the affidavit also contains portions that run afoul of Rule 191(a). The trial court correctly struck, for example, the conclusory paragraphs attesting to Mr. Langendorf's beliefs that "any dispute Safeway had with the proof of no insurance would be determined at the AAA arbitration as the insurance policy states," that "through my experience in uninsured motorist cases *** any discovery which Safeway needed, including sworn statements and IME's would be conducted in discovery as allowed in the arbitration rules," and that Safeway's "failing to pay its share of the AAA fees was a common practice." Nonetheless, the trial court "swept up the good with the bad" when it struck the affidavit in its entirety, rather than considering those portions that complied with Rule 191(a). *Murphy*, 88 Ill. 2d at 462-63.

¶ 46    Safeway points out that Mr. Langendorf's affidavit "does not identify the dates of any of the alleged conversations," nor "where the conversations took place or who was present," and urges us to affirm the trial court's decision to strike the affidavit in its entirety. But the Ebijimis correctly rely on *Allerion, Inc. v. Nueva Icacos, S.A. de C.V.*, 283 Ill. App. 3d 40, 47 (1996), in which this court affirmed the trial court's finding that an affidavit complied with Rule 191(a), notwithstanding that the affiant generally referenced " '25 telephone conversations and several items of written correspondence' " with representatives of the opposing party. We cautioned that "affidavits will not be stricken for technical deficiencies" when "it appears that an affidavit is based on the personal knowledge of the affiant and a reasonable inference is that the affiant could competently testify to the contents of the affidavit at trial." (Internal quotation marks omitted.) *Id.* at 46.

¶ 47    In sum, while we agree that the trial court properly struck certain paragraphs of Mr. Langendorf's affidavit, the paragraphs that we have relied on in this opinion attest to facts within Mr. Langendorf's knowledge, lay a foundation for the admissibility of those facts, and comply

15

with Rule 191(a) under the liberal construction mandated for affidavits in opposition to summary judgment. See *Mitchell*, 79 Ill. App. 3d at 220. We will consider these portions in reviewing whether summary judgment was properly granted for Safeway.

¶ 48                    C. Summary Judgment

¶ 49    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). "Although the use of summary judgment aids in the expeditious disposition of a lawsuit," it is "a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." (Internal quotation marks omitted.) *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). We review the granting of summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 50    The trial court granted summary judgment to Safeway based on the Ebijimis' failure to comply with Conditions 3 (requiring notice) and 10 (requiring proof of claim) of the policy. While we think an argument could be made that the notice condition was actually complied with, it does not matter. For the reasons that follow, Safeway would be estopped from relying on either of these conditions by virtue of what Mr. Langendorf testified in his affidavit was its insistence that the Ebijimis supply Safeway with certification from IDOT that Ms. Tyson was not insured. This was a condition that appeared nowhere in the policy and which it appears would have been difficult, if not impossible, to comply with.

¶ 51    To establish estoppel in an insurance context, the insured must show that (1) the acts or statements of the insurer or its agent misled her, (2) she relied on those representations, (3) her reliance was reasonable, and (4) she suffered detriment or prejudice because of her reliance.

*Chatham Corp. v. Dann Insurance*, 351 Ill. App. 3d 353, 366-67 (2004). It is not necessary to show that the insurer intended to mislead the insured in order for estoppel to apply, and the burden of establishing prejudice rests with the insured. *Id.* at 367.

¶ 52    The Ebijimis argue genuine issues of material fact precluded the trial court's finding that Safeway never "lulled or induced" them into inaction on the policy conditions. They argue the "factual statements in Mr. Langendorf's affidavit contradict the contents of the correspondence Safeway used and the court relied upon in granting summary judgment." Essentially, they argue that they were told compliance with other conditions of the policy—completing the uninsured motorist form, submitting to an IME, and giving sworn statements—would be futile because the missing IDOT certification was a precondition to coverage. But as Mr. Langendorf explains—in the portions of his affidavit that we have found should have been considered—the only information IDOT had was that Ms. Tyson was insured and thus he could not obtain an IDOT certification stating that she was not.

¶ 53    The Ebijimis cite cases in which insurers were estopped by their own conduct from relying on the insureds' failure to comply with policy conditions. In *Davis v. United Fire & Casualty Co.*, 81 Ill. App. 3d 220, 225 (1980), for example, we held that an insurer that gave a "flat denial" of coverage to an insured was barred from later denying a duty to defend on the basis that the insured failed to timely supply documents under the policy terms. In *Heneghan v. State Security Insurance Co.*, 195 Ill. App. 3d 447, 451-52 (1990), we held that the insurer was estopped from relying on a two-year period to request arbitration because he had agreed to await the outcome of the suit against the potentially at-fault motorists. In doing so, we found that the insurer's conduct "was calculated to lull [the] plaintiff into the reasonable belief that arbitration *** would be held off until the jury determined whether the insured or the uninsured defendant

was at fault." *Id.* at 452. And in *Downing v. Wolverine Insurance Co.*, 62 Ill. App. 2d 305, 316-17 (1965), we found that the insurer induced the insured business owner to believe he had no obligation to file a formal proof of loss under the policy and was therefore barred from raising the proof of loss requirement to defeat coverage under estoppel and waiver doctrines.

¶ 54 Safeway relies on our decision in *Emcasco Insurance Co. v. Alvarez*, 110 Ill. App. 2d 307 (1969). In *Emcasco* we held that a demand for arbitration by the insureds did not preclude the insurer from denying coverage on the basis of the insureds' failure to submit to a medical examination. However, in *Emcasco*, in contrast to this case, there was no evidence of conduct by the insurer that might have estopped the insurer from relying on the insureds' failure to submit to the medical examination. The Ebijimis are not seeking an excuse from compliance with the conditions of the policy because they demanded arbitration. Rather, they are seeking to be excused because they allege and presented evidence demonstrating that Safeway's conduct lulled them into believing that compliance with those conditions would be meaningless. Under these circumstances, *Emcasco* does not apply.

¶ 55 While estoppel clearly applies, waiver may be relevant as well. Waiver, by contrast to estoppel, "consists of either an express or implied voluntary and intentional relinquishment of a known right" and is "essentially unilateral in character, focusing on an insurer's conduct, and requiring no prejudice to, nor detrimental reliance by, an insured." (Internal quotation marks omitted.) *Chatham Corp.*, 351 Ill. App. 3d at 365. Questions of estoppel and waiver "are left to the trier of fact where the material facts are in dispute or where reasonable people might draw different conclusions from the evidence." *Lumbermen's Mutual Casualty Co. v. Sykes*, 384 Ill. App. 3d 207, 220 (2008).

¶ 56 We note that it also appears to us that the Ebijimis complied with the notice requirement

18

in Condition 3 of the policy. The purpose of a notice requirement in an insurance policy is to enable the insurer to make a timely and thorough investigation of the insured's claim. *Allstate Insurance Co. v. Carioto*, 194 Ill. App. 3d 767, 780 (1990). Under the Safeway policy, notice was to be given "as soon as practicable." Neither Safeway nor the trial court have suggested that the less than two-month period from the January 20, 2016, accident until the first letter to Safeway on March 13, 2006, was not timely notice. Indeed, our supreme court has held that even a 27-month delay in providing notice can satisfy the "as soon as practicable" requirement. *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 186, 191 (2010).

¶ 57     The notice requirement of the Safeway policy was only for "particulars sufficient to identi[fy] the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and address of the injured and of available witnesses." Mr. Langendorf's letter of March 13, 2006, advised Safeway that "our office has been retained by [Beatrice and Dada Ebijimi] to prosecute a claim against you for uninsured motorist," attached a notice of attorney's lien, and stated its demand for arbitration. This appears to be information sufficient to identify the insured and begin an investigation.

¶ 58     For these reasons, we reverse the summary judgment ruling for Safeway and remand the case for further proceedings. Genuine issues of material fact exist on the affirmative defenses of estoppel and waiver. Although Mr. Langendorf's affidavit does not establish either estoppel or waiver as a matter of law, it is sufficient to raise factual issues as to what he was told by Safeway and whether the Ebijimis acted reasonably in reliance on those statements in their failure to meet the preconditions of coverage.

¶ 59     We also address the Ebijimis' affirmative defense of *laches*, which may become relevant on remand. *Laches* is "an equitable principle which bars an action where, because of delay in

19

bringing suit, a party has been misled or prejudiced or has taken a course of action different from what the party otherwise would have taken." (Internal quotation marks omitted.) *Osler Institute, Inc. v. Miller*, 2015 IL App (1st) 133899, ¶ 23. We agree with the trial court that, with respect to the claim of *laches*, "neither party here is innocent" of the delay in this case. It is true that Safeway did not file a declaratory judgment action when it denied coverage, after the initial demand and denial, but both parties sat on their hands for roughly five years and waited for the other to pursue a ruling clarifying the coverage issue. Either party could have filed suit at any time, and the Ebijimis apparently could have, as they finally did, paid both arbitration fees and proceeded to arbitration without Safeway. The Ebijimis point to no way in which they were prejudiced or induced to take a different course of action due to Safeway's delay in bringing suit.

¶ 60        D. Dismissal of the Counterclaim and Third-Party Complaint

¶ 61                          1. The Counterclaim

¶ 62    In its September 17, 2014, order, the trial court granted Beatrice "leave to withdraw her counter claim and to file an amended counter claim on or before October 14, 2014," as well a leave "to add [an] additional party." Instead of withdrawing that counterclaim, the Ebijimis filed their third-party complaint against PWO on October 14, 2014. They moved for clarification on March 12, 2015, seeking an order stating that their original counterclaim was still pending because they never superseded it with an amended version. That motion was not ruled on until it was brought to the court's attention in 2017.

¶ 63    On December 12, 2016, the trial court denied the Ebijimis leave to file an amended counterclaim. The trial court found that when the Ebijimis did not file an amended counterclaim after the September 17, 2014, order granted them leave, they had in effect withdrawn their initial counterclaim. On February 28, 2017, the court noted that it was not previously aware of the long-

pending motion to clarify whether the counterclaim was pending but that, in any event, each of the six counts in the counterclaim was mooted by the summary judgment ruling. The Ebijimis ask this court, if we remand, to do so with an instruction that they be allowed to proceed with and to amend their counterclaim.

¶ 64    Since we have reversed the summary judgment finding, that is no longer a basis for dismissing the counterclaim. We also disagree with the trial court's declaration that no counterclaim remained pending because the Ebijimis had never acted on the order allowing them to file an amended counterclaim. It is the filing of an amended pleading that withdraws the previous pleading. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 384 (1996). Thus, the counterclaim is pending. While we are mindful that the decision whether to allow amendments to pleadings rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion (*O'Brien v. City of Chicago*, 285 Ill. App. 3d 864, 872 (1996)), it appears that the denial of the request to amend in this case rested on the incorrect premise that no counterclaim was pending. Upon remand, any amendment to that pleading should be reviewed and allowed if sought on " 'just and reasonable terms.' " *Id.* (quoting 735 ILCS 5/2-616(a) (West 1994)). The parties have not briefed and we express no opinion on the merits of any of the Ebijimis' counterclaims other than their claims for estoppel, waiver, and *laches*.

¶ 65                              2. The Third-Party Complaint

¶ 66    The trial court granted Safeway's combined motion to dismiss the Ebijimis' third-party complaint under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2006)). The trial court found that the summary judgment ruling for Safeway was an affirmative matter defeating coverage and the section 155 claims against PWO did not state a claim because "aiding and abetting" in the "bad faith" conduct of an insurer by that insurer's attorney does not give rise to a

21

cause of action in Illinois.

¶ 67    It is clear that the summary judgment ruling in favor of Safeway is no longer a basis for dismissing this claim. However, we agree with Safeway and PWO that section 155 of the Insurance Code provides only for claims against an insurance company. The Ebijimis alleged in their third-party complaint that Robert J. Parrillo was a founding attorney and managing partner at PWO and the majority shareholder of Safeway, meaning that these two companies are one and the same. Neither party really addresses this argument. In addition, the Ebijimis' third-party complaint is not limited to allegations that PWO conspired with Safeway to violate section 155. Rather, it appears that the Ebijimis are also attempting to allege a claim for consumer fraud. On remand, the trial court should address the merits of the third-party complaint if the Ebijimis wish to pursue it and allow for amendment if appropriate.

¶ 68                                IV. CONCLUSION

¶ 69    For the reasons stated in this opinion, we (1) affirm the denial of the motion for substitution of judge; (2) reverse, in part, the trial court's ruling striking the affidavit of counsel for the Ebijimis; (3) reverse the trial court's grant of summary judgment for Safeway and find that there are genuine issues of material fact as to the Ebijimis' affirmative defenses of estoppel and waiver; and (4) reverse the dismissal of the Ebijimis' counterclaim and the dismissal of the Ebijimis' third-party complaint against PWO. We remand for further proceedings consistent with this opinion.

¶ 70    Affirmed in part, reversed in part, and remanded.