2025 IL App (1st) 231543

FIFTH DIVISION
September 30, 2025

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-23-1543

| | | |
|---|---|---|
| SAFEWAY INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CH 12097 |
| | ) | |
| BEATRICE EBIJIMI and DADA EBIJIMI, | ) | Honorable |
| | ) | Anna Demacopoulos, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

**OPINION**

¶ 1    Almost 20 years ago, when her daughter, Beatrice Ebijimi, was struck by a car, Dada Ebijimi initiated a claim for uninsured motorist coverage under the automobile insurance policy issued to her by Safeway Insurance Company (Safeway). Following years of intermittent correspondence with the Ebijimis' lawyer, Robert Langendorf, Safeway filed suit for a declaration of no coverage, on the basis that the Ebijimis had not submitted a claim form, given a sworn statement, or submitted Beatrice to an independent medical examination, all conditions precedent to coverage set out in the policy. The Ebijimis' position was that Safeway was estopped from denying coverage because it had led Mr. Langendorf to believe that any attempts to satisfy those conditions would be futile if the Ebijimis could not produce evidence of the driver's uninsured

status in the specific form that Safeway demanded. Following a bench trial, the trial court entered judgment in Safeway's favor.

¶ 2       On appeal, the Ebijimis assert numerous claims of error. Their primary argument, however, is that it was an abuse of discretion for the trial court, as a sanction for his conduct at trial, to bar the testimony of Mr. Langendorf concerning key conversations he claims to have had with Safeway representatives. We agree that this sanction was an abuse of discretion but conclude that the Ebijimis have not shown they were prejudiced by this error, where their offer of proof makes clear that this testimony would not have proven their estoppel claim. We also conclude that each of the Ebijimis' other arguments about trial error lack merit. We affirm.

¶ 3                         I. BACKGROUND

¶ 4       A more detailed account of the parties' pleadings and the earlier proceedings in this matter can be found in our 2018 opinion affirming in part and reversing in part the trial court's grant of summary judgment in favor of Safeway. *Safeway Insurance Co. v. Ebijimi*, 2018 IL App (1st) 170862. We summarize them here only to provide context for the issues raised in this appeal. We then provide a brief overview of the evidence produced at trial, reserving facts specific to the Ebijimis' various arguments for our analysis.

¶ 5                   A. Pretrial Proceedings and First Appeal

¶ 6       The Ebijimis assert that on January 20, 2006, Beatrice was struck by a vehicle driven by Patricia Tyson, an uninsured driver. Beatrice's mother, Dada, initiated a claim for uninsured motorist coverage under the personal automobile insurance policy issued to her by Safeway that covered the one-year period beginning on January 8, 2006 (policy No. 0110701-IL-PP-003), and the Ebijimis corresponded with Safeway over the following years through their counsel, Mr. Langendorf.

¶ 7    On May 7, 2013, Safeway filed this action seeking declarations that (1) no coverage existed under the policy for Beatrice's accident and (2) due to the Ebijimis' failure to comply with the policy terms, Safeway was "not obligated to settle or arbitrate the uninsured motorist claim." Safeway alleged that the Ebijimis had failed to satisfy either condition 3—requiring them to provide Safeway with timely written notice of the particulars of the accident—or condition 10—requiring them to submit to examinations under oath, complete forms furnished by Safeway, have Beatrice examined by a Safeway-selected physician, and allow Safeway to obtain and review her medical records.

¶ 8    The Ebijimis answered the complaint on August 5, 2014, asserting, among other affirmative defenses, that Safeway was estopped from disputing or denying coverage because the company had "led [the Ebijimis] to believe their claim would not be processed because [Safeway] was not satisfied with their proof of no insurance with respect to the driver of the vehicle." According to the Ebijimis, Safeway never advised them that it was contesting coverage because of a failure on their part to comply with conditions precedent in the policy.

¶ 9    In a counterclaim demanding arbitration and asserting various causes of action against Safeway on behalf of a purported class of similarly situated policyholders, the Ebijimis alleged that Safeway had a policy of wrongfully demanding a certified letter from the Illinois Department of Transportation (IDOT) as the only acceptable proof of a driver's uninsured status. The Ebijimis alleged that when IDOT records here indicated that Ms. Tyson was insured by Affirmative Insurance Company (Affirmative), they obtained and forwarded to Safeway on December 17, 2007, a letter from Affirmative confirming that Ms. Tyson was not in fact one of the company's insureds at the time of the accident. An attached copy of that letter stated that the policy issued to Ms. Tyson "had been cancelled due to non-payment of premium on 10-13-05 and had not been

reinstated prior to the loss of 1-20-06." In an attached letter dated July 18, 2008, however, Safeway told Mr. Langendorf: "We need IDOT certification and a completed accident report form that was previously forwarded to you. Upon receipt of same, we can schedule your client's sworn statement. You will need to set your client's IME as explained in our numerous letters to you." The Ebijimis alleged that nothing in the policy required an IDOT certification and that Safeway's refusal to acknowledge the alternative proof they had provided of the driver's uninsured status meant that "any actions by [them] with respect to the claim or compliance with conditions of the policy would have been futile."

¶ 10    Safeway moved for summary judgment on November 12, 2014, arguing that there was no genuine issue of material fact as to whether the Ebijimis had complied with the conditions precedent to coverage set out in the policy. Discovery was permitted as to the issues raised in the motion, and the Ebijimis filed their response on May 23, 2016. They attached to it an affidavit submitted by Mr. Langendorf referencing the conversations he averred that he had had with Safeway representatives and that the Ebijimis argued supported their affirmative defense of estoppel. Safeway moved to strike the affidavit as conclusory, contradicted by the documentary evidence, and—as to the conversations between Mr. Langendorf and Safeway—lacking an adequate foundation. Safeway argued in its reply in support of summary judgment that the Ebijimis had presented no admissible evidence of any statement made by it that would have lulled the Ebijimis into a belief that Safeway would not require their compliance with the conditions in the policy. "The only detrimental reliance by the Ebijimis," Safeway insisted, "was on their own attorney, who failed to take the most basic actions to pursue the uninsured motorist claim" on their behalf.

¶ 11    The trial court granted Safeway's motion to strike the affidavit in its entirety, on the basis

that the contents were conclusory, self-serving, and lacking a proper foundation. In the court's view, the affidavit

> "[did] not aver any details regarding the conversations that [Mr. Langendorf] had with individuals at Safeway that lead him to believe that this was an appropriate and reasonable conclusion for him to make, nor [wa]s there anything in the affidavit that [laid a] proper foundation for th[o]se conversations to be admissible at trial or at a subsequent hearing."

¶ 12  The court then granted summary judgment in favor of Safeway, finding that no genuine issue of material fact existed regarding whether the Ebijimis had failed to comply with the conditions in the policy. It rejected their affirmative defenses, specifically concluding that their defense of estoppel—that Safeway had " 'lulled or induced Attorney Langendorf and defendants to take no action on their claim as to Condition 10' "—lacked any support. *Safeway*, 2018 IL App (1st) 170862, ¶ 24.

¶ 13  We affirmed in part and reversed in part. Although certain portions of Mr. Langendorf's affidavit did not comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), which sets forth the requirements for affidavits offered in support of or in opposition to summary judgment, we concluded that the trial court had "swept up the good with the bad." (Internal quotation marks omitted.) *Safeway*, 2018 IL App (1st) 170862, ¶ 45. We noted that an affidavit satisfies Rule 191(a) " 'if from the document as a whole it appears the affidavit is based on the personal knowledge of the affiant and there is a reasonable inference that the affiant could competently testify to its contents' " at trial. *Id.* ¶ 40 (quoting *Madden v. F.H. Paschen/S.N. Nielson, Inc.*, 395 Ill. App. 3d 362, 386 (2009)). We concluded that the affidavit met that standard and that, under the liberal construction required of affidavits submitted in opposition to summary judgment, it raised issues of material fact precluding summary judgment. *Id.* ¶ 47.

¶ 14                              B. Proceedings on Remand

¶ 15                              1. Pretrial Motions

¶ 16    On remand, co-counsel was hired to represent the Ebijimis at trial, as Mr. Langendorf, who was expected to testify as a witness, would be conflicted from doing so. That attorney was permitted to withdraw from the case, however, on November 7, 2022. On January 24, 2023, just six days before trial was set to begin, another lawyer, Mr. Curcio (no first name given), appeared in court. Mr. Curcio explained that he had first been approached about appearing in this case during the week between Christmas and the New Year and that, due to previously scheduled trials, he could not file an appearance on behalf of the Ebijimis unless the court continued the matter until at least May. The court denied that request.

¶ 17    On January 25, the Ebijimis filed an emergency motion to continue the trial that was set to begin just five days later so that they could "proceed with minimal class discovery" on their class action allegations and a motion for class certification "could be heard before the final trial in this matter." The court denied that motion, and Mr. Langendorf moved for a substitution of judge for cause. Noting that this was the fourth such motion the Ebijimis had filed and concluding that it was made solely for the purpose of delay, the court denied the motion without assigning it to another judge for a hearing.

¶ 18    On January 26, Michael Connolly filed his appearance on behalf of the Ebijimis. He moved for a continuance the next day, indicating that he was unable to try this case as scheduled due to a death in his family. The court denied the motion for a continuance as untimely, lacking support, and made for the purpose of delay, but stated that it would allow him to attend the services when it was made clear when they would be held. The trial court judge noted that Beatrice's accident had occurred 17 years ago, that this case had been pending for 10 years, and that she "would find

it difficult to believe that any judge in this building would think that it would be appropriate to continue this case." The judge said that she respected the life and death of Mr. Connolly's niece and would allow him to appear by Zoom if necessary but concluded, "I think that we're ready to go to trial."

¶ 19 Safeway moved to bar nonparty witnesses from being present except when testifying, and the court denied the motion as to Mr. Langendorf, ruling that he would be allowed to stay in the courtroom during testimony but that, when he testified as a witness, Mr. Connolly would perform the direct- and cross-examination. At this, Mr. Langendorf suggested that the court could simply admit his affidavit in opposition to summary judgment into the record and he would not "even need to be a witness." The judge responded, "I'm not going to do that, Mr. Langendorf because as the Appellate Court opinion indicated that there is a different standard for affidavits and testimony, so, respectfully, I'm going to deny your request to introduce your affidavit."

¶ 20 A five-day bench trial was held beginning on January 30, 2023.

¶ 21                                    2. The Evidence at Trial

¶ 22                                       a. Cheryl Fleming

¶ 23 Safeway's first witness was its former counsel, Cheryl Fleming. Ms. Fleming stated that, as a partner at Parillo, Weiss & O'Halloran (PWO), she had supervised uninsured motorist claims for Safeway, including the Ebijimis' claim. Ms. Fleming did not recall ever talking to Mr. Langendorf; their communications had been in writing. She denied ever doing or saying anything to deter or prevent the Ebijimis from fulfilling the conditions precedent to coverage in the policy and denied agreeing to arbitrate without those conditions first having been met. She denied ever having told Mr. Langendorf that it was unnecessary for his clients to provide a statement under oath, a completed accident report, or a completed proof of claim form. She likewise never told Mr.

Langendorf that it was unnecessary for Beatrice to submit to an independent medical evaluation. Except where the injured person was deceased and could not provide a statement under oath, in her 20 years supervising uninsured motorist claims, Ms. Fleming could not recall ever having told a claimant or claimant's counsel that a condition precedent to coverage was not required.

¶ 24   Ms. Fleming denied, on cross-examination, that Safeway required, as a precondition for coverage, proof that the driver was uninsured in the specific form of an IDOT certification. She acknowledged that in a July 18, 2008, letter she sent to Mr. Langendorf she had said "[w]e need IDOT certification" and "[u]pon receipt of same, we can schedule your client's sworn statement," but insisted that this was not the same as a demand for IDOT certification as the only form of proof that the driver was uninsured. Nor, in her estimation, did it mean that the sworn statement would "only" be scheduled upon receipt of that form of proof. "I don't believe that the letter delayed it," she said, "My intent was never to delay this claim."

¶ 25                                      b. The Ebijimis

¶ 26   Dada Ebijimi testified that at the time of the accident, Beatrice was 11 years old. Mr. Langendorf had been their counsel since at least March 13, 2006. Dada was aware that an application was filed for American Arbitration Association (AAA) to arbitrate the uninsured motorist claim with Safeway in 2008, when Beatrice was 13 years old, and again in 2013, when Beatrice was almost 18 years old. She agreed, when asked by Mr. Langendorf, that it would have been a "waste of time" and a "futile exercise" for Beatrice to submit to an independent medical evaluation or to provide a completed claim form or sworn statement until they were able to provide Safeway with an IDOT certification. Dada agreed that Safeway gave no deadlines for compliance with its requests and never communicated to Dada that the failure to comply with them would result in a denial of coverage. She agreed that at no time before this action was filed did Safeway

ever communicate to her that the Ebijimis were in violation of the policy or that coverage would be denied.

¶ 27    On cross-examination, Dada acknowledged that she had relied on Mr. Langendorf to communicate with Safeway on behalf of her and her daughter and to do everything that was necessary to pursue their claim. Dada could not remember if she had filled out any forms but said that she followed Mr. Langendorf's directions, and if he had asked her to, she would have.

¶ 28    Beatrice Ebijimi, who was 27 years old at the time of trial, recalled that she was involved in an accident in the winter or early spring of 2006, when she was in fifth grade, and that it required her to be taken by ambulance to a nearby hospital. Beatrice did not personally take any steps to pursue an uninsured motorist claim. She was a minor and "left everything to [her] mother" to handle. Her mother hired Mr. Langendorf, and Beatrice did not know the details of what he did to pursue that claim. To the best of her knowledge, she had done everything Mr. Langendorf had instructed her to do.

¶ 29                                    c. Cliff Vickers

¶ 30    Cliff Vickers testified that in 2006 he was an assistant claims manager at Safeway and the person assigned to handle the company's uninsured motorist claims. Safeway received a letter from Mr. Langendorf on March 13, 2006, seeking arbitration of the Ebijimis' claim and attaching an attorney lien. The company responded several days later by sending a report of loss form to the Ebijimis and a letter to Mr. Langendorf instructing him, in accordance with condition 10 of the policy, to make appointments with PWO for the Ebijimis to give statements under oath and with one of two Safeway-approved doctors for Beatrice to undergo an independent medical examination.

¶ 31    Mr. Vickers said that Safeway then waited for the Ebijimis to comply. According to him,

Safeway never received a list of Beatrice's medical providers or copies of her hospital or ambulance records, and sometime in 2011 they closed the reserve set aside for the claim due to inactivity. "Nothing was being sent in, and nothing was being done." When Safeway received a second demand for arbitration of the claim in early 2013, PWO sent Mr. Langendorf a letter stating that the firm was now handling the matter on behalf of Safeway.

¶ 32    On cross-examination by Mr. Langendorf, Mr. Vickers agreed that Safeway did not send the Ebijimis any letters saying the company was disputing coverage and that the filing of the complaint in this matter was "the method used to advise the Ebijimis of the dispute of coverage." Though noncompliance with the conditions in the policy was the reason coverage was disputed, Mr. Vickers agreed that Safeway also believed the Ebijimis had failed to provide sufficient evidence of the driver's uninsured status. He acknowledged that there was no written definition in the policy of what constituted sufficient proof of a driver's uninsured status. Although an IDOT certification was not required, Mr. Vickers said "I guess I agree with that" when asked if it was nevertheless the preferred method of proof. When asked what other ways existed, he said, "[a] letter from the insurance company saying there's no coverage" and could not recall any others at that time. He nevertheless agreed with Ms. Fleming that the letter from Affirmative was "not direct proof that there [wa]s no insurance," because "there could be other insurance out there."

¶ 33    When the Ebijimis filed an application with AAA in 2008, Safeway did not pay any portion of the invoice. Mr. Vickers' understanding was that this was because the Ebijimis had not complied with the conditions of the policy. He denied that that decision had anything to do with their failure to provide a certified IDOT letter as proof of the driver's uninsured status.

¶ 34    The Ebijimis recalled Mr. Vickers, who was examined by Mr. Langendorf. Mr. Vickers testified that the police report, prepared at the time of the accident, indicated that Ms. Tyson, the

at fault driver, was covered by Affirmative. Mr. Vickers agreed that proof of the uninsured status of the at fault driver is required for payment to be made on an uninsured motorist claim but did not know whose burden it was to provide such proof. Mr. Vickers testified that Safeway did not investigate the uninsured status of the driver in this case but rather "sent it to the attorneys to handle it at that point" and that he "[did not] know how they did that." When asked if a certified IDOT letter, specifically, was required, he said, "I don't know. We hire attorneys to handle that aspect."

¶ 35                              d. Mr. Langendorf

¶ 36    Over Safeway's objection, Mr. Langendorf took the stand on February 8, 2023, and was questioned by Mr. Connolly. Mr. Connolly soon asked for a short break to "get the exhibits all together and get them straight," noting, "We had to redo it all because we have many more exhibits." Mr. Connolly was able to get through some preliminary questions and have Mr. Langendorf identify some documents before court broke for the day. The court admonished Mr. Langendorf, telling him, "you are still under oath, which means, as in [*sic*] any other witness, it would be inappropriate for you to confer with Counsel about your testimony that you've already had, and the testimony you are about to give. I'm hoping you will abide by the Court's order."

¶ 37    There was no court reporter when the parties returned to court the following day, and a Zoom recording was instead made of the proceedings, which we discuss in detail in our analysis. No testimony was taken on that day. When trial resumed on February 10, 2023, the trial judge accused Mr. Langendorf of violating her order by conferring with Mr. Connolly regarding the trial exhibits during the break and barred him from further testifying in this case. The trial concluded without Mr. Langendorf's testimony, although he made an offer of proof which we discuss below.

¶ 38                    3. The Circuit Court's Judgment in Favor of Safeway

¶ 39    Following closing arguments on February 15, the court entered a 23-page memorandum

11

opinion and order finding in favor of Safeway. The court's memorandum discussed barring Mr. Langendorf's testimony, noting that when it had adjourned for the day on February 8, 2023, "Mr. Langendorf was instructed to not speak with Mr. Connolly about his testimony or the exhibits." Both the Zoom recording and Mr. Connolly's statements to the court on February 10, however, led the court to conclude that Mr. Langendorf, and not Mr. Connolly, had "had the final say on the content of the exhibit list." In the court's view, this was "a direct violation of the court's order" justifying the barring of Mr. Langendorf's further testimony. The court concluded, among other things, that the uncontroverted evidence presented at trial established that the Ebijimis had not complied with condition 10 of the policy and that they had failed to prove their affirmative defense of equitable estoppel.

¶ 40    The Ebijimis now appeal.

¶ 41                              II. JURISDICTION

¶ 42    After denying the Ebijimis' posttrial motions, the trial court entered judgment in favor of Safeway on July 27, 2023, and the Ebijimis filed a timely notice of appeal from the judgment on August 28, 2023. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), which together govern appeals from final judgments entered by the circuit court in civil cases.

¶ 43                              III. ANALYSIS

¶ 44            A. The Trial Court's Decision to Bar Mr. Langendorf's Continued Testimony

¶ 45    The Ebijimis' primary argument on appeal is that the trial court abused its discretion when it barred Mr. Langendorf from continuing to testify at trial as a sanction for what the trial judge viewed as a violation of her order that he not communicate with Mr. Connolly during a break in the proceedings.

12

¶ 46    As authority for barring Mr. Langendorf from continuing to testify, the trial court cited Illinois Supreme Court Rule 219 (eff. July 1, 2002), titled "Consequences of Refusal to Comply with Rules or Order Relating to Discovery or Pretrial Conferences." Subsection (c)(iv) of that rule provides that "[i]f a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with *** [the rules governing discovery, requests for admission, or pretrial procedures] or fails to comply with any order entered under th[o]se rules," then the court may order, among other things, "[t]hat a witness be barred from testifying concerning that issue." Ill. S. Ct. R. 219(c)(iv) (eff. July 1, 2002).

¶ 47    Although the Ebijimis fail to point this out, it is clear that the order at issue here did not concern discovery or pretrial procedures; it concerned Mr. Langendorf's conduct as a witness at trial. And as this court has repeatedly held, "Rule 219 is not a basis for sanctioning conduct that occurs at trial." *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 469 (2006) (citing *Day v. Schoreck*, 31 Ill. App. 3d 851, 852-53 (1975)).

¶ 48    Although both Safeway and the Ebijimis analyze the trial court's sanction only under Rule 219, sanctions are also available outside of that rule. The trial court may regulate the conduct of the parties, lawyers, and witnesses during trial, for example, as part of its "inherent power to afford a fair trial to all parties." *Smith v. City of Chicago*, 299 Ill. App. 3d 1048, 1053 (1998). It is through the exercise of this power that courts frequently enter orders excluding nonparty witnesses from the courtroom or prohibiting witnesses from discussing their testimony with each other, measures intended to preserve the integrity of the witnesses' testimony. *Id.* Because the exercise of this inherent authority does not stem from a mandate in a statute or rule, however, clarity is a key concern. *Id.* at 1053-54. As we explained in *Smith*, "[w]hen a court determines, in the administration of a trial, that it is necessary to prohibit conduct which is not otherwise proscribed

13

by a statute or rule, it is imperative that the court's order be clear and that all parties concerned have an accurate understanding of its limitations." *Id.* at 1054. "If a trial court's orders are unclear, any sanction entered for their perceived violation is an abuse of discretion and subject to reversal on appeal." *Id.*

¶ 49    In our view, the court's instruction to Mr. Langendorf when a break was taken after his testimony on February 8, 2023, did *not* clearly prohibit the conduct for which his further testimony was barred. Although, in its memorandum opinion and order, the court recalled that it had ordered Mr. Langendorf "not to speak to Mr. Connolly about his testimony *or the exhibits*" (emphasis added) during that break, what the court actually said was, "you are still under oath, which means, as in [*sic*] any other witness, it would be inappropriate for you to confer with Counsel about your testimony that you've already had, and the testimony you are about to give." Unlike its prior directives—the court told Ms. Fleming, for example "not to have any conversations with anyone" during a break in her testimony—the trial court's admonition to Mr. Langendorf concerned only his testimony. He was never specifically instructed not to communicate with Mr. Connolly regarding the trial exhibits.

¶ 50    More significantly, the interactions between the court and Mr. Langendorf following that admonition reflect the understanding they both appear to have had that Mr. Langendorf and Mr. Connolly would confer regarding the exhibits during the break in question. There was no court reporter when the parties returned to court on the morning of February 9, 2023. A Zoom recording was instead made of the proceedings. At the start of those proceedings, the court, Mr. Langendorf, Mr. Connolly, and Ms. Hillison (Safeway's counsel) were all present. The court noted that Mr. Connolly had been marking exhibits in an inconsistent manner that made them difficult to keep track of and asked him, going forward, to refer to the exhibits only by the designations given to

them when they were first admitted. Mr. Connolly expressed some confusion over which exhibits had already been introduced, prompting Mr. Langendorf to propose that Mr. Connolly meet with Ms. Hillison to go over them together. Mr. Langendorf proposed that he "would not be present" and would "stay out of it" because he understood that Ms. Hillison "had issues with [him]" stemming from something that had happened the day before.

¶ 51    Ms. Hillison rejected that proposal, making clear that she did not wish to meet with either Mr. Langendorf or Mr. Connolly unless the judge or a deputy was present. The court suggested instead that Ms. Hillison could leave while Mr. Connolly separated out the exhibits that he still intended to produce and arranged them on a table in the courtroom. He would then leave, and she could return to review the exhibits alone. Following a discussion of other matters, the court said:

> "So, Ms. Hillison if you want to step out. *Mr. Langendorf*, Mr. Connolly, when you are ready, let my clerk know that, um, you are ready to have Ms. Hillison look at those documents. I will then have you step out, and I will then allow Ms. Hillison to come in for a period of time." (Emphasis added.)

The Zoom recording shows the judge and Ms. Hillison leave, and for approximately 40 minutes, Mr. Connolly can be seen arranging exhibits on the conference table. Mr. Langendorf remains in the courtroom for a significant portion of that time, primarily looking at his phone but on several occasions openly conversing with Mr. Connolly regarding the exhibits. The two men then inform a member of the judge's staff that they are finished and leave the courtroom. Ms. Hillison is invited back to the courtroom and begins her own review of the exhibits.

¶ 52    Under these circumstances, where the trial court addressed *both* Mr. Connolly and Mr. Langendorf and instructed them, together, to let the court's staff know when the exhibits were ready, a reasonable person in Mr. Langendorf's position would not have understood that he was

forbidden from engaging in any discussion whatsoever with Mr. Connolly regarding the trial exhibits.

¶ 53     *In re H.S.H.*, 322 Ill. App. 3d 892 (2001), is instructive. Although the trial court in that case excluded other witnesses from the courtroom, it never ordered the witnesses, the attorneys, or anyone else not to discuss the trial testimony. *Id.* at 898. We held that it was an abuse of discretion for the court to sanction the State when its witness spoke to two other witnesses before they took the stand, as that was conduct that "violated no clear order." *Id.* Here, absent a clear violation of a clear order, the imposition of a sanction was likewise improper.

¶ 54     In sum, where there was no clear violation of a clear order, it was an abuse of discretion for the trial court to bar Mr. Langendorf's continued testimony as a sanction. We need not address, therefore, the Ebijimis' additional arguments that continuing the Zoom recording while court was not in session and relying on the resulting footage to find that Mr. Langendorf had consulted with Mr. Connolly regarding the exhibits violated state and federal wiretapping statutes, that the lack of an evidentiary hearing on the basis for the sanction deprived the Ebijimis of due process, or that the trial court relied on matters outside the record in deciding that the sanction was warranted. Nor do we need to address Safeway's arguments that the Ebijimis forfeited these other arguments by not making them in the trial court. Our finding that the imposition of this sanction was an abuse of discretion renders these arguments moot.

¶ 55     However, the imposition of this sanction, which we find to be an abuse of discretion, does not require us to reverse and remand for another trial. "Erroneous evidentiary rulings are only a basis for reversal if the error was substantially prejudicial and affected the outcome of [the] trial." (Internal quotation marks omitted.) *Ittersagen v. Advocate Health & Hospitals Corp.*, 2020 IL App (1st) 190778, ¶ 71. It is the burden of the party seeking reversal to establish prejudice, and "[w]e

16

will not reverse if it is apparent that no harm has been done." (Internal quotation marks omitted.) *Id.* On this record, we cannot conclude that the trial court's decision to bar Mr. Langendorf's further testimony had such a prejudicial effect.

¶ 56 Mr. Langendorf's barred testimony concerned certain conversations he claimed to have had with Safeway representatives about the Ebijimis' uninsured motorist claim, which the Ebijimis argue proved their defense of equitable estoppel. To establish equitable estoppel, the party asserting the defense must show that it reasonably and in good faith relied upon the conduct or statements of the opposing party to its detriment, such that it would be unfair to permit the opposing party to now deny the truth of its representations. *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-14 (2001). "The party claiming estoppel has the burden of proving it by clear and unequivocal evidence." *Id.* at 314.

¶ 57 The trial court invited the Ebijimis to make an offer of proof as to the barred testimony. As that offer, the Ebijimis relied solely on Mr. Langendorf's 2016 affidavit (both the original version and an amended version), which they had submitted in opposition to Safeway's motion for summary judgment. Mr. Langendorf averred as follows:

"18. Over the course of a few years after the initiation of the claim, prior to and after the AAA demand, I had various conversations with attorneys from PWO and specifically Cheryl Fleming. During my conversations with Cheryl Fleming I was told nothing would be done on the Ebijimi's claim by Safeway because they did not have a certified letter from IDOT stating that Ms. Tyson was uninsured.

19. Specifically, I recall telephone conversations with attorney Cheryl Fleming close in time to when we provided them with the letter from Affirmative Insurance stating this was not an uninsured motorist case. During the conversations Cheryl Fleming told me

Safeway was not accepting coverage. I asked what they wanted us to do (the Ebijimis) and she suggested I file a declaratory action. I said no and I would proceed with AAA and they could file a declaratory action.

20. The telephone conversations with Ms. Fleming, and my past experience with Safeway and PWO, was a clear indication to me the claim was disputed based upon Safeway's dissatisfaction with the proof of no insurance provided and that any actions taken on the part of the Ebijimis would be futile.

* * *

24. No further actions were taken on the claim on behalf of the Ebijimis at that time because my communications with PWO made it clear and Safeway led me to believe the threshold showing of uninsured motorist status of the driver was not accepted."

¶ 58 The trial court assessed the Ebijimis' offer of proof in its memorandum opinion and order, stating:

"The affidavits refer to 'phone conversations,' but fail to mention when or where the conversations took place, who was present and what exactly was said. The affidavits refer to 'experiences,' with Safeway, but again lack foundation and authentication. There is reference to 'communications with PWO,' but, once again, there is no identification as to individuals, when, where, who was present or the form of communication.

*** If these conversations did occur, the Court would expect a lawyer of Mr. Langendorf's experience to subsequently memorialize these conversations in writing in his file. There is no such evidence presented in the offer of proof. Mr. Langendorf knows the rules of evidence as does this Court, but he chose not to follow them in filing his offer of proof as to his proposed testimony."

18

Based on this lack of foundation, the trial court said in her decision that she would not have allowed Mr. Langendorf to testify regarding the purported conversations referred to in his affidavit, even if the court had not already barred that testimony as a sanction.

¶ 59     We need not decide if we agree with the trial court that Mr. Langendorf's affidavit contained no admissible evidence because it is clear that his testimony, even if some or all of it had been allowed to come in, was far too general and conclusory to have affected the outcome at trial. The trial court, as the finder of fact, had before it Ms. Fleming's July 18, 2008, letter to Mr. Langendorf stating: "We need IDOT certification and a completed accident report form that was previously forwarded to you. Upon receipt of same, we can schedule your client's sworn statement. You will need to set your client's IME as explained in our numerous letters to you." The court found that the letter did not establish that Safeway communicated to Mr. Langendorf that compliance with the conditions in the policy would be futile if the Ebijimis could not obtain proof of the at fault driver's uninsured status in the specific form of a certified IDOT letter. Ms. Fleming took the stand and specifically denied that interpretation of the letter. She was adamant both that Safeway did not require IDOT certification and that the claim was denied because the Ebijimis did not fulfill the preconditions of coverage.

¶ 60     The conclusory statements, vague references to undated phone calls, and the assertion by Mr. Langendorf that he himself believed Safeway had given a "clear indication" that it would deny coverage contained in Mr. Langendorf's affidavit would simply not have been enough to satisfy the Ebijimis' burden of proving the affirmative defense of equitable estoppel by clear and convincing evidence. See *Dwyer v. Love*, 346 Ill. App. 3d 734, 740 (2004) (equating the "clear and unequivocal" standard of proof with the more commonly referred to "clear and convincing" standard); *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12 (defining "[c]lear and convincing

evidence" as "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question" (internal quotation marks omitted)). Unlike at summary judgment, where we found in our 2018 decision that portions of the affidavit were sufficient to raise an issue of fact, at trial the Ebijimis had the burden of proof on this defense, and it was a high one.

¶ 61    For similar reasons, the Ebijimis' argument that the trial court's finding in Safeway's favor was against the manifest weight of the evidence also fails. The evidence here was undisputed that the Ebijimis did not satisfy the conditions in the policy. The Ebijimis' only chance of prevailing was by proving their affirmative defense of equitable estoppel. The July 18, 2008, letter did not do so on its own, and the trial court was entitled to believe Ms. Fleming that it did not mean what the Ebijimis claimed it meant (see *People v. Gray*, 2017 IL 120958, ¶ 35 ("a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses")).

¶ 62    In a late reply brief we granted the Ebijimis leave to file instanter, after this opinion had been drafted, they contend for the first time that the trial court's ruling violated our 2018 mandate. That argument is forfeited. See *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1046 (2009) (noting that "an appellant forfeits points not raised in the initial brief and cannot argue them for the first time in the reply brief" (citing Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006))). It also lacks merit. The Ebijimis insist that the trial court had no right "to foreclose the very proof [our] mandate required [it] to hear." Nothing in our 2018 decision precluded the trial court from barring testimony as a sanction.

¶ 63    In short, appellants are unable to demonstrate that barring Mr. Langendorf's testimony as a sanction "was substantially prejudicial and affected the outcome of the trial" (internal quotation

marks omitted) (*Moore v. Mandell*, 2023 IL App (5th) 220289, ¶ 34). We will not reverse based on this error.

¶ 64                    B. Challenged Evidentiary Rulings

¶ 65    The Ebijimis also challenge two of the trial court's evidentiary rulings. The admissibility of evidence is of course a matter resting within the sound discretion of the trial court (*People v. Pikes*, 2013 IL 115171, ¶ 12), and we will not disturb its rulings absent an abuse of that discretion—*i.e.*, where they are "fanciful, unreasonable or when no reasonable person would adopt the trial court's view" (*People v. Taylor*, 2011 IL 110067, ¶ 27).

¶ 66    The Ebijimis first argue that the court wrongly excluded checks made out by Mr. Langendorf to AAA under the best evidence rule. Nowhere in the single paragraph they devote to this argument, however, do the they once cite to the record on appeal. Nor is there any mention of the checks or the trial court's ruling on their admissibility in the Ebijimis' lengthy statement of facts. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires arguments on appeal to include citations to the pages of the record relied on. The Ebijimis have also drawn no connection between payments made to AAA and their ability to prove the elements of their defense of estoppel. Thus, we can discern no way in which they might have been prejudiced by this ruling, even if it were wrong.

¶ 67    The Ebijimis next argue that it was error for the trial court to bar the evidence deposition of Michael McCready, a personal injury attorney who has purportedly handled many uninsured motorist cases against Safeway and would have provided testimony concerning the company's "pattern and practice" of requiring an IDOT certification as the only acceptable proof of a driver's uninsured status. The trial court refused to admit Mr. McCready's deposition into evidence because the Ebijimis did not disclose him as a witness until midway through trial.

¶ 68    Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) requires parties to identify the witnesses they intend to call at trial during discovery. As noted above, Rule 219(c) "empowers a trial court to impose appropriate sanctions, including barring a witness from testifying, for a party's failure to comply with the rules or court orders regarding discovery." *Smith v. Murphy*, 2013 IL App (1st) 121839, ¶ 24.

¶ 69    Counsel for the Ebijimis argued at trial that Mr. McCready's testimony could not be disclosed earlier because it was introduced to rebut the "surprise testimony" of Mr. Vickers and Ms. Fleming, whom counsel claimed Safeway had itself not properly disclosed. The trial court found this argument completely unpersuasive. Counsel was aware that Mr. Vickers and Ms. Fleming were, respectively, the Safeway claims adjustor and the attorney handling the Ebijimis' claim, and it could have been no surprise to him that Safeway called them as witnesses at trial. The court also noted that allegations regarding Safeway's policies had long formed the basis of the Ebijimis' counterclaims, which it had always been their burden to prove. There was nothing, in the court's view, that should have prevented the Ebijimis from finding, disclosing, and securing the testimony of Mr. McCready before trial. We agree and find no abuse of discretion.

¶ 70    Nor, again, is it clear what difference the exclusion of this evidence would have made to the outcome of this trial. Mr. McCready did not work on the Ebijimis' case. His testimony regarding what Safeway did in other cases could perhaps have lent credibility to a firsthand account of what happened *here*, but it is no substitute for such an account. Without admissible evidence regarding what Safeway said and did *in this case* to lull them into the belief that compliance with the conditions in the policy were not required, the Ebijimis simply could not prevail.

¶ 71    The challenged rulings were not abuses of the trial court's discretion and resulted in no prejudice to the Ebijimis.

¶ 72          C. The Court's Denial of a Continuance Four Days Before Trial

¶ 73    The Ebijimis next argue that the trial court denied them the counsel of their choice by refusing to grant a continuance just days before trial. As noted above, the Ebijimis had sought to retain Mr. Curcio just four days before trial, but he had a conflict that would require a continuance of some months. The trial court denied that request, citing the closeness of the trial date and the length of time the case had already been pending. The Ebijimis argue that this forced them to go to trial represented by Mr. Connolly, whom they claim was "compromised by grief and familial commitment" following the tragic death of his niece.

¶ 74    Although parties to civil actions are certainly entitled to be represented by counsel of their own choosing (*Herbster v. North American Co. for Life & Health Insurance*, 150 Ill. App. 3d 21, 28 (1986)), the Ebijimis are wrong that this "constitutional right at the heart of the Sixth Amendment" is one that "supersedes convenience to the parties, court and jury." The sixth amendment does not apply to civil cases. See U.S. Const., amend. VI ("In all criminal prosecutions, the accused shall enjoy ***."). In civil cases, "[i]t is well settled that a litigant does not have an absolute right to a continuance." *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. Rather, "[t]he decision to grant or deny a motion for a continuance is within the sound discretion of the trial court" and will not be disturbed absent an abuse of that discretion. *Id.*

¶ 75    As Safeway points out, Cook County Circuit Court Rule 5.2 provides that a party shall be entitled to only one continuance on the ground that his attorney is engaged in another trial or hearing. Cook County Cir. Ct. R. 5.2(a) (July 1, 1976). And "[a] continuance shall *not* be granted upon the ground of substitution or addition of attorneys." (Emphasis added.) Cook County Cir. Ct. R. 5.2(b) (July 1, 1976).

¶ 76    Here, the attorney brought on to help prepare this case for trial moved to withdraw on

September 28, 2022, and her motion was granted on November 7, 2022. Trial was not scheduled for nearly three months, and yet the Ebijimis apparently waited until just one month remained before seeking the assistance of Mr. Curcio. Mr. Curcio's request for a continuance was furthermore accompanied by a flurry of emergency filings the trial court reasonably viewed as untimely and made for the purpose of delay. Under these circumstances, we conclude neither that the Ebijimis raised "especially grave reasons" for a continuance, nor that the denial of one was an abuse of the trial court's discretion.

¶ 77                    D. Animus and Bias by the Trial Judge

¶ 78    The Ebijimis next argue that the trial judge harbored a bias against their counsel, Mr. Langendorf, that prevented her from fairly deciding this matter. They ask us to vacate all orders entered by that judge since our last decision on appeal and remand this matter for a new trial before a different judge. As support for this extraordinary relief, they cite Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), which gives this court the authority to enter any order and grant any relief that a case may require. That authority has been used, as the cases the Ebijimis cite demonstrate, to reassign a case to a different judge when it is otherwise necessary to reverse and remand the case for a new trial. See, *e.g.*, *Eychaner v. Gross*, 202 Ill. 2d 228, 279 (2002) (discussing this authority). Here, the Ebijimis have failed to persuade of any such reversible error and, even if they had, a request for such relief would be moot, as the judge who presided over this trial has since retired.

¶ 79    As an independent basis for reversal, the charge of bias also fails on the merits. "A trial judge is presumed to be impartial." *Id.* at 280. To overcome this presumption, a party asserting such a claim must point to an extrajudicial source of bias—as in *People v. Rowjee*, 308 Ill. App. 3d 179, 187-88 (1999), also cited by the Ebijimis, where the trial judge conducted an improper

independent investigation of the facts of the case—or the judge's comments and conduct must "reveal a high degree of favoritism or antagonism as to make fair judgment impossible" (*People v. Class*, 2025 IL 129695, ¶ 44). To establish bias, it is not enough simply to show that a judge's comments sometimes revealed frustration, particularly where the judge's motivation was not to disparage counsel but rather to control the trial. *People v. Burgess*, 2015 IL App (1st) 130657, ¶ 174. Accordingly, remarks " 'that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases' " will not necessarily support such a finding. *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 80    Having reviewed the record of proceedings in this trial at length, we acknowledge that the trial judge indeed often appeared frustrated with Mr. Langendorf. But Mr. Langendorf's conduct often appears to us to have been designed to prompt this frustration. He was frequently argumentative or disrespectful to opposing counsel and to the court, failed to effectively elicit information from the witnesses, and repeatedly failed to either comprehend or abide by the trial judge's evidentiary rulings. Despite the judge's admonition that he could not use propensity evidence to prove his claim, Mr. Langendorf appeared fixated on eliciting testimony concerning Safeway's practices generally. We agree with Safeway that the judge often exhibited extraordinary patience and restraint in her efforts to finally see this matter through to a judgment. Within the context of this unnecessarily long and tedious litigation, and particularly given counsel's own questionable conduct, we in no way view the trial judge's treatment of him as evidence of "deep-seated favoritism or antagonism" (see *id.*).

¶ 81                             E. Court Reporting Fees

¶ 82    Finally, the Ebijimis fault the trial court for refusing to limit the fees that could be charged by the court reporting service in this case, which they claim were excessive, against public policy,

and infringed on their right to appeal. We agree with Safeway that we lack jurisdiction to consider this issue. "The appellate court is one of limited review." *Schittino v. Village of Niles*, 2024 IL App (1st) 230926, ¶ 21. "We may not review simply anything we wish that transpired in the circuit court, searching for mistakes to fix, for wrongs to right." *Id.* Rather, our jurisdiction is limited to a review of the orders listed in the appellant's notice of appeal. *Id.*; see Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017) (requiring the notice of appeal to "specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court"). Here, the Ebijimis' notice of appeal seeks reversal only of the July 27, 2023, final judgment in this matter. Because it includes no mention of any order concerning court reporting fees, that matter is not properly before us.

¶ 83    In their reply, the Ebijimis cite *Northbrook Bank & Trust Co. v. 2120 Division LLC*, 2015 IL App (1st) 133426, ¶ 8, for the proposition that it is not necessary for a particular order to be identified, "as long as the order that is identified in the notice of appeal directly relates back to the order or judgment sought to be reviewed." This is just another way of stating the familiar principle that "an appeal from a final judgment order entails review of not only the final judgment order, but also any interlocutory orders that were a step in the procedural progression leading to the judgment." (Internal quotation marks omitted.) *Id.* That principle has no application here, however, where any order concerning the court reporting fees came *after* the judgment order specified in the notice of appeal, not before it.

¶ 84    Even if this matter were properly before us, the motions and orders the Ebijimis refer to regarding this dispute are not included in the record on appeal. It is the appellants' burden to present a sufficiently complete record to support their claims, and any doubts arising from the incompleteness of the record must be resolved against them. *Chicago Title & Trust Co. v. Chicago Title & Trust Co.*, 248 Ill. App. 3d 1065, 1075 (1993) (citing *Foutch v. O'Bryant*, 99 Ill. 2d 389,

26

391-92 (1984)). The Ebijimis' include their motion for injunctive relief concerning the court reporting fees in the appendix accompanying their brief, but that is nothing but an improper attempt to supplement the record on appeal. See Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019) (noting that the appendix should contain "any pleadings or other materials *from the record* that are the basis of the appeal or pertinent to it" (emphasis added)). Absent a complete record, we have no way of confirming what specific relief the Ebijimis sought, the arguments made for or against that relief, or the trial court's reasons for denying it. There is simply no basis on which we could find reversible error.

¶ 85     The Ebijimis' suggestion that we search out these missing portions of the record in the electronic filings of the circuit court and take judicial notice of them merely confirms a broader problem with their argument. When it denied their motion for injunctive relief on March 1, 2024, the court noted that the Ebijimis sought an order compelling the court reporting agency to supply them with transcripts at a certain rate and concluded that it could not provide that relief, as the court reporting service was "not a party to this case, and [the Ebijimis] ha[d] not filed a complaint or counterclaim stating a cause of action against [it]." We agree entirely with that ruling. The court reporting service would certainly be a necessary party to any request that the court limit the amount it was permitted to charge for its services or find its contract void as against public policy. See *Cameron v. Bartels*, 214 Ill. App. 3d 69, 75-76 (1991) (defining a necessary party as any with "a present, substantial interest in the matter being litigated, and in whose absence a complete resolution of the matter in controversy [could not] be achieved").

¶ 86     This lawsuit has been pending for over a decade. It concerns $1,800 of insurance coverage for an accident that occurred nearly 20 years ago. In what it is sadly emblematic of the disregard for judicial resources that has been a hallmark of this case, counsel for the Ebijimis devotes seven

pages of their briefing to this issue alone, one that is plainly not properly before us, lacks any supporting record, and has been presented with no cogent legal argument in its favor.

¶ 87                                  IV. CONCLUSION

¶ 88     For the above reasons, we affirm the circuit court's judgment in favor of Safeway.

¶ 89     Affirmed.

---

### *Safeway Insurance Co. v. Ebijimi*, 2025 IL App (1st) 231543

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 13-CH-12097; the Hon. Anna Demacopoulos, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | David W. Lewarchik, of Lewarchik Law LLC, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Keely Hillison, of Keely Hillison Law LLC, of Chicago, for appellee. |

---